UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )
                                    )
                                    )   No. 4:21-CR-539 RWS
                                    )
MICHAEL J. MCCORMAC,                )
                                    )
        Defendant.                  )

PLEA HEARING

BEFORE THE HONORABLE RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

MAY 1, 2023

APPEARANCES:

For Plaintiff:        Meredith Reiter, Esq.
                      OFFICE OF THE U.S. ATTORNEY
                      111 South 10th Street, 20th Floor
                      St. Louis, MO  63102

For Defendant:        William Thomas Marsh, Esq.
                      OFFICE OF FEDERAL PUBLIC DEFENDER
                      1010 Market Street, Suite 200
                      St. Louis, MO  63101

Reported By:          SHANNON L. WHITE, RMR, CRR, CSR, CCR
                      Official Court Reporter
                      United States District Court
                      111 South Tenth Street, Third Floor
                      St. Louis, MO  63102
                      (314) 244-7966

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1                (PROCEEDINGS STARTED AT 10:35 AM.)

2     (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH

3                   THE DEFENDANT PRESENT:)

4         THE COURT:  So we're here today in the case styled

5 U.S. against Michael McCormac, 4:21-CR-539.  Would counsel

6 make their appearances.

7         MS. REITER:  Yes, Your Honor.  Meredith Reiter on

8 behalf of the United States.

9         MR. MARSH:  And, Your Honor, Bill Marsh on behalf of

10 Mr. McCormac, who is present on bond.

11         THE COURT:  Good morning, sir.

12         Counsel, it's my understanding Mr. McCormac is

13 present for the purpose of changing his pleas as to Counts 3

14 and 4; is that correct?

15         MR. MARSH:  That is correct, Your Honor.

16         THE COURT:  And that's being done in conjunction with

17 the filing of a guilty plea agreement?

18         MR. MARSH:  Yes, sir.

19         THE COURT:  So, Mr. McCormac, I noticed that you were

20 in court for the prior proceeding.  So you understand I'm

21 going to ask you a lot of questions.

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  If, at any time, I ask you a question and

24 you're not sure you understand what I'm asking you, will you

25 promise me that you'll tell me that?

3

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  And we're not in a hurry.  So if, at any

3  time, you believe that you need to consult with your attorney,

4  will you promise me that you'll tell me that?

5    THE DEFENDANT:  Yes, Your Honor.

6    THE COURT:  Because your answers to my questions are

7  to be under oath, at this time, the clerk of the court will

8  administer the oath to you, sir.

9               **(DEFENDANT SWORN BY THE CLERK.)**

10                        **EXAMINATION**

11  **BY THE COURT:**

12  Q    Do you understand you've now been sworn?

13  A    Yes, Your Honor.

14  Q    The first series of questions I'm going to ask you are to

15  establish that you're competent to make the decisions you're

16  making.  How old are you?

17  A    Fifty-five, Your Honor.

18  Q    What's the highest level of education which you've

19  completed?

20  A    Bachelor degree.

21  Q    So you read the plea agreement?

22  A    Yes, Your Honor.

23  Q    And all the other documents in the case?

24  A    Yes, Your Honor.

25  Q    Do you have a doctor or physician you see on a regular

4

1    basis?

2    A    Yes, Your Honor.  Several.

3    Q    Have you ever been told that you have any chronic or

4    long-term illnesses?

5    A    Yes, Your Honor.

6    Q    Would that those be?

7    A    I'm a type one diabetic, and I have muscular dystrophy.

8    The type I have out of the 200 -- it's called

9    Charcot-Marie-Tooth.

10   Q    Are you taking any prescription medication?

11   A    Yes, Your Honor.

12   Q    And what would that be?

13   A    That is insulin for the diabetes.  I'm also taking

14   Allegra D for allergies.

15   Q    Anything else?

16   A    And it's baby aspirin are the other thing.

17   Q    Are you taking the medications as prescribed?

18   A    Yes.

19   Q    Do they affect your ability to think clearly?

20   A    No, Your Honor.

21   Q    Are you under the care of -- well, are there any

22   medications you're supposed to be taking but for some reason

23   you're not?

24   A    No, Your Honor.

25   Q    Are you under the care of a psychiatrist --

1    A    No, Your Honor.

2    Q    -- or a psychologist?

3    A    No.  No, Your Honor.

4    Q    Have you ever been under the care of any type of mental

5    health care provider?

6    A    Yes.

7    Q    When would that have been?

8    A    Twelve years ago.

9    Q    And what was --

10   A    I was with a psychiatrist.

11   Q    Was there a diagnosis or was it just --

12   A    No, no.  Just a normal visit.  Going in, I was dealing

13   with the death of a family member, and I was dealing with

14   that.

15   Q    All right.  Have you taken any drugs or medicine other

16   than what you've told us about or drunk any alcohol in the

17   last 24 hours?

18   A    No, Your Honor.

19   Q    Are you under the influence of drugs or alcohol as you

20   appear here?

21   A    No, Your Honor.  Just insulin.

22   Q    Okay.  Does the attorney for the U.S. Attorney -- well,

23   do you understand what's happening today and why you're here?

24   A    Yes, Your Honor.

25        THE COURT:  Does the attorney for the U.S. Attorney's

1  Office or the attorney for Mr. McCormac have any doubt as to

2  his competency?

3           MS. REITER:  No, Your Honor.

4           MR. MARSH:  No doubt, Your Honor.

5           THE COURT:  It is my finding he is competent to

6  proceed.

7  Q    (BY THE COURT) You understand that because this is a

8  criminal case, you have the right to be represented by an

9  attorney throughout the case, and if you cannot afford an

10  attorney, one is appointed to represent you at the expense of

11  the United States?

12  A    Yes, Your Honor.

13  Q    Have you had enough time to discuss your case with your

14  attorney?

15  A    Yes, Your Honor.

16  Q    Are you satisfied with his representation of you in this

17  case?

18  A    Yes, Your Honor.

19  Q    I'm going to ask you some questions now about the rights

20  you're giving up by pleading guilty.  You understand, if you

21  plead not guilty, you are entitled to a speedy and public

22  trial by a judge or by a jury?

23  A    Yes, Your Honor.

24  Q    And at a trial you are presumed innocent.  The burden of

25  proof is on the U.S. Attorney.  Do you understand that?

1  A    Yes, Your Honor.

2  Q    And at a trial the U.S. Attorney would have to bring

3  their witnesses into this courtroom; those witnesses would

4  have to testify in your presence; your attorney could

5  cross-examine the witnesses, object to the evidence, and could

6  call witnesses and offer evidence on your behalf.

7  A    Yes, Your Honor.

8  Q    And you have a right to testify, and you also have the

9  right not to testify.

10 A    Yes, Your Honor.

11 Q    And no one could argue that you were guilty because you

12 did not testify.  You understand that?

13 A    I understand, yes, Your Honor.

14 Q    You understand that by pleading guilty you're waiving

15 your right to a trial and the other rights associated with a

16 trial?

17 A    Yes, Your Honor.

18 Q    You're also waiving your right against

19 self-incrimination, because I will ask you if you did what

20 they say you did.  You understand that?

21 A    Yes, Your Honor.

22 Q    Having discussed your rights with you, is it still your

23 decision to plead guilty?

24 A    Yes, Your Honor.

25 Q    Has anyone threatened you, forced you, or in any way

1    coerced you into pleading guilty?

2    A    No, Your Honor.

3    Q    There is a plea agreement.  If we turn to the last page,

4    the page marked 15, there are three signatures on this page.

5    The middle one purports to be your signature.  Is that your

6    signature?

7    A    Yes, Your Honor, that's my signature.

8    Q    Did you read this document before you signed it?

9    A    Yes, Your Honor.

10    Q    Did you go over it with your lawyer?

11    A    Yes, Your Honor.

12    Q    Did he answer all your questions?

13    A    Yes, he did.

14    Q    Do you believe you understand what's in this document?

15    A    Yes, Your Honor.

16    Q    Is everything in here true?

17    A    Yes, Your Honor.

18    Q    Sentencing doesn't take place for several months.

19    Between now and then, a presentence report is prepared.  That

20    report will discuss the facts of your case and apply the

21    sentencing guidelines to those facts.  You understand that?

22    A    Yes, Your Honor.

23    Q    And you've talked to your lawyer about the guidelines and

24    how they work; correct?

25    A    Yes, Your Honor.

1    Q    The report will make the final calculation.  If you

2    disagree with it, you have the right to object.  Do you

3    understand that?  In fact, that's kind of contemplated by your

4    plea agreement based upon the disagreement about the value of

5    the transactions.  You understand that?

6    A    Yes, Your Honor.

7    Q    And if there is no agreement on that, we'll have a

8    hearing, we'll take testimony, review documents, and I'll make

9    a determination and make a final calculation as to what the

10   recommended sentence is.  Do you understand that?

11   A    Yes, Your Honor.

12           THE COURT:  This portion of the transcript is sealed.

13   **(PURSUANT TO LOCAL RULE 13.05, A BENCH CONFERENCE WAS HELD ON**

14   **THE RECORD AND PLACED UNDER SEAL, AFTER WHICH THE FOLLOWING**

15   **PROCEEDINGS CONTINUED IN OPEN COURT:)**

16   Q    (BY THE COURT) And, finally, there is a statute that lists

17   a number of factors I'm required to consider before I can

18   determine the appropriate sentence in your case.  Do you

19   understand that?

20   A    Yes, Your Honor.

21   Q    Let's go over your plea agreement.  You agreed to plead

22   guilty to Counts 3 and 4.  Do you understand that?

23   A    Yes, Your Honor.

24   Q    The U.S. Attorney has agreed to dismiss Counts 1 and 2.

25   Do you understand that?

1   A    Yes, Your Honor.

2   Q    The U.S. Attorney has also agreed not to seek any further

3   federal prosecution against you in this district arising out

4   of your participation in a scheme to defraud Medicare,

5   Missouri Medicaid, and Ohio Medicaid through the GoLiveWell

6   Pharmacy as set out in the indictment and the payment of

7   illegal kickbacks to marketing companies, referrals -- for

8   referrals for prescriptions to GoLiveWell between February of

9   2018 and November of 2019.

10          Do you understand that?

11  A    Yes, Your Honor.

12  Q    But you understand what's in the plea agreement, these

13  are recommendations to me; I'm not required to follow what's

14  in the plea agreement?

15  A    Yes, Your Honor.

16  Q    But if I sentence you consistent with the agreement,

17  you've agreed not to appeal the sentence that's imposed.  Do

18  you understand that?

19  A    Yes, Your Honor.

20  Q    You've also agreed not to file any motions or any

21  lawsuits challenging how your case has been handled except for

22  a claim you may have for misconduct by the prosecutor or

23  ineffective assistance by your lawyer.

24  A    Yes, Your Honor.

25          THE COURT:  Now, as to forfeiture, why don't you

11

1    describe for me what he's agreed to forfeit based upon the

2    disagreement about the amount in controversy here.

3           MS. REITER:  Yes, Your Honor.  Once the Court makes a

4    determination at sentencing as to what the restitution amount

5    is, the defendant agrees to a money judgment forfeiture of

6    that amount.

7           THE COURT:  That's correct?

8           MR. MARSH:  That's our understanding, Your Honor.

9    Again, that is something that we're going to have to hash out

10   at sentencing absent, you know, agreement between now and

11   then.

12   Q    (BY THE COURT) Do you understand that, sir?

13   A    Yes, Your Honor.

14   Q    Now, beginning on page 7, there is a discussion about how

15   it's proposed the guidelines work in your case.  The base

16   offense level is an 8.  That's the calculation that goes down

17   the side of the guidelines chart.  Do you understand that?

18   A    I couldn't hear that, Your Honor.

19   Q    The base offense level is an 8.  Do you understand that?

20   A    Yes, Your Honor.

21   Q    Okay.  This is where we have a disagreement.  The

22   U.S. Attorney believes the amount at issue is more than $3 1/2

23   million but less than $9 1/2 million.  Do you understand that?

24   A    Yes, Your Honor.

25   Q    That results in an 18-level increase on the base offense

1   level if that's the amount.  Do you understand that?

2   A   Yes, Your Honor.

3   Q   Now, you disagree with that, and I'm sure we'll hear

4   about that at sentencing.  And if it's a different amount,

5   more or less, that will change the number of levels that are

6   added.  Do you understand that?

7   A   Yes, Your Honor.

8   Q   Up to three levels will be subtracted for your acceptance

9   of responsibility.  Do you understand that?

10   A   Yes, Your Honor.

11   Q   Three levels are to be added because you were a manager

12   or supervisor in the activity.  Do you understand that?

13   A   Yes, Your Honor.

14   Q   If the U.S. Attorney is correct, then the final total

15   offense level could be a 26.  Do you understand that?

16   A   Yes, Your Honor.

17   Q   There is no agreement as to what your criminal history is

18   or how it's to be treated by the guidelines.  Do you

19   understand that?

20   A   Yes, Your Honor.

21   Q   Now, for you to have been found guilty on Counts 3 and 4,

22   the U.S. Attorney would had to have proved that you knowingly

23   and willfully offered or paid reimbursement to marketing

24   company MM and marketing company HPS as set out in Counts 3

25   and 4; that the remuneration was paid primarily in order to

1    induce those companies to purchase and order, arrange for, and

2    recommend the purchasing and ordering of goods and services

3    insured by Ohio Medicaid and Medicare; the goods and services

4    were covered in whole or in part by Ohio Medicaid and

5    Medicare; and those are both federal health care programs.

6          Do you understand that?

7    A    Yes, Your Honor.

8    Q    And if you don't believe the U.S. Attorney could prove

9    those things as to Count 3 and 4, you should not plead guilty.

10   Do you understand that?

11   A    I understand, Your Honor.

12   Q    Does this agreement contain all the promises made to you

13   by the U.S. Attorney?

14   A    Yes.

15   Q    Did they make you any promises they didn't put in

16   writing?

17   A    Not that I know of.

18   Q    Okay.  You would be the one to know because --

19   A    Okay.

20   Q    I'm asking that to protect you because, if you're

21   pleading guilty counting on something they told you but didn't

22   write down, now is the time to tell me.  Do you understand

23   that?

24   A    Okay.

25   Q    You understand what I'm saying?

14

1   A    Yes, I understand.

2   Q    Has anyone else offered you anything or given you

3   anything to get you to plead guilty today?

4   A    I couldn't hear the last part, Your Honor.

5   Q    Has anyone offered you anything or given you anything to

6   get you to plead guilty today?

7   A    No, Your Honor.

8   Q    Are you pleading guilty to protect somebody else or cover

9   up for somebody else?

10  A    No, Your Honor.

11       THE COURT:  I'm going to ask the Assistant U.S.

12  Attorney to tell us what facts they believe they would have

13  proved at trial.  I would ask that you listen carefully

14  because, when she's done, I'm going to ask you if you did what

15  she says you did.

16       MS. REITER:  Yes, Your Honor.

17       The parties agree that the facts in this case are as

18  follows and that the Government would prove these facts beyond

19  a reasonable doubt if the case were to go to a trial:

20       At all times relevant to the indictment, the

21  defendant, Michael J. McCormac, was an owner and operator of

22  GoLiveWell Pharmacy, LLC, which was located in Creve Coeur in

23  the Eastern Division of the Eastern District of Missouri.

24       GoLiveWell primarily functioned as a mail-order

25  pharmacy which filled prescriptions for beneficiaries

1    throughout the United States.  At all times relevant to the

2    indictment, the defendant, through GoLiveWell, submitted or

3    caused to be submitted reimbursement claims for prescription

4    drugs to Medicare, Missouri Medicaid, and Ohio Medicaid, which

5    are federal health insurance programs and public plans

6    affecting commerce in some way or degree.

7           After incorporating GoLiveWell on or about March 20

8    of 2017, the defendant enrolled GoLiveWell with various

9    federal health insurers and Pharmacy Benefits Managers --

10   which I'll refer to as "PBMs" -- which administer health

11   insurance plans.

12          The defendant certified in those agreements that

13   GoLiveWell would comply with applicable federal and state

14   laws, including but not limited to the federal Anti-Kickback

15   Statute.

16          Between in or about February 28 of 2018, and

17   November 30 of 2019, a large portion of the claims of the

18   defendant, through GoLiveWell, submitted to federally funded

19   health insurance plans included claims for expensive topical

20   creams, oral medications, and antibiotic and antifungal drugs

21   referred to as "foot bath" drugs.  The foot bath drugs were

22   prescribed purportedly to treat a variety of foot infections

23   and foot pain.

24          Medicare and Medicaid beneficiaries who are

25   prescribed those foot bath drugs received a plastic foot spa

1    free of charge and an expensive cocktail of drugs, including

2    oral antibiotic capsules, bottles of antibiotic solution, and

3    tubes of antifungal cream.  The drugs included but were not

4    limited to Vancomycin capsules, Clindamycin 1% Solution, and

5    Ketoconazole 2% cream.

6          Beneficiaries were instructed to mix the capsules and

7    the solution in warm water to soak their feet and then to

8    apply the antifungal cream afterward.

9          The defendant admits that he, on behalf of

10   GoLiveWell, contracted with purported marketing firms to

11   identify patients for whom GoLiveWell would fill

12   prescriptions.  The defendant knew that the marketing

13   companies used a variety of tactics to identify patients,

14   including a practice referred to as "doctor chase," and

15   running advertisements to attempt to get patients to opt in to

16   receiving prescriptions for various expensive drugs such as

17   topical creams and foot bath drugs.

18         When individuals responded to an advertisement, they

19   would receive a call collecting pertinent personal

20   information, including their health insurance information, and

21   attempting to get the patient to confirm that they wanted that

22   medication.

23         The defendant, on behalf of GoLiveWell, procured

24   leads through various purported marketing companies, including

25   but not limited to marketing company MM and marketing company

1    HPS.  In exchange for those leads, which were prescriptions

2    that were referred to GoLiveWell, the defendant knowingly and

3    willfully agreed to pay illegal kickbacks to the marketing

4    companies in the form of various percentages of GoLiveWell's

5    net profit or margin on each prescription, including for

6    prescriptions that he knew would be reimbursed by federal

7    health care programs.

8              For example, the defendant agreed to pay marketing

9    company MM approximately 60 percent of GoLiveWell's margin and

10   to pay marketing company HPS approximately 45 percent of its

11   margin.

12             The defendant and his employees kept spreadsheets

13   tracking payments to the various marketing companies and

14   stamped the name of the marketing company on each prescription

15   to keep track of which prescription came with which marketing

16   group.

17             The defendant admits that he structured certain

18   GoLiveWell contracts and invoices with marketing companies to

19   falsely reflect an hourly rate for marketing services, the

20   purpose of which was to conceal the true nature of the

21   payments to the marketing companies.

22             For example, on or about February 12 of 2019, the

23   defendant, through GoLiveWell, invoiced marketing company HPS

24   for 1,043.34 hours of purported marketing services.  In

25   reality, that payment to marketing company HPS was calculated

1    by taking 45 percent of GoLiveWell's margin on prescriptions

2    for that month after subtracting shipping costs.

3           Regarding Count 3 in particular, the defendant admits

4    that, within the Eastern District of Missouri, he knowingly

5    and willfully offered to pay remuneration to marketing company

6    MM in the form of $34,053.31, the primary purpose of which was

7    to induce marketing company MM to refer various prescriptions

8    to GoLiveWell, including a prescription dated on or about

9    October 26 of 2018 by provider AB for the drug Chlorzoxazone,

10   which was supplied to Ohio Medicaid Beneficiary DB.

11          Regarding Count 4, the defendant admits, within the

12   Eastern District of Missouri, he knowingly and willfully

13   offered to pay remuneration to marketing company HPS in the

14   form of $166,312.50, the primary purpose of which was to

15   induce marketing company HPS to refer various prescriptions to

16   GoLiveWell, including a prescription dated on or about

17   January 30, 2019, by provider SS for the drugs Vancomycin,

18   Clindamycin, and Ketoconazole, which were supplied to Medicare

19   beneficiary LS.

20          It is the Government's position that as a result of

21   the defendant, through GoLiveWell, submitting claims for

22   prescription drugs which were procured in violation of the

23   Anti-Kickback Statute, Medicare paid GoLiveWell at least

24   $4,700,000, Missouri Medicaid paid GoLiveWell at least

25   $490,000, and Ohio Medicaid paid GoLiveWell at least $330,000

1    to which it was not entitled.

2            It is the Government's position that the defendant

3    received a significant portion of those funds into his

4    personal bank account.

5    Q    (BY THE COURT) Now, I understand you disagree with the

6    amounts, but is what the Assistant U.S. Attorney said true

7    about what you did?

8    A    Yes, Your Honor.  We used the contracts for marketing.

9            MS. REITER:  Your Honor, I would just like to confirm

10   for the record that the defendant does agree with the factual

11   basis that's in the plea agreement.

12           THE COURT:  Only disagreeing as to the amount --

13           MS. REITER:  Only disagreeing as to the loss amount.

14   Q    (BY THE COURT) That's correct?

15   A    That's correct.

16   Q    All right.  Now, you understand as to each count the

17   maximum term of imprisonment is ten years?

18   A    Yes, Your Honor.

19   Q    There's a maximum fine of $100,000 per count?

20   A    Yes, Your Honor.

21   Q    And a supervised release of not more than three years on

22   each count.  Do you understand that?

23   A    Yes, Your Honor.

24   Q    They could all be added together.  Do you understand

25   that?

1   A    Yes, Your Honor.

2   Q    We've obviously disagreed about the amount of

3   restitution, slash, forfeiture, and that amount will be

4   determined at sentencing.  Do you understand that?

5   A    Yes, Your Honor.

6   Q    There's also a special assessment of $100 per count.  Do

7   you understand that?

8   A    Yes, Your Honor.

9   Q    Do you understand that by pleading guilty you are

10  subjecting yourself to the maximum penalties we just

11  discussed?

12  A    Yes, Your Honor.

13  Q    At the time of sentencing, your attorney and the U.S.

14  Attorney may make recommendations about your sentence, but you

15  understand I'm not required to follow their recommendation?

16  A    Yes, Your Honor.

17  Q    If the sentence is more severe than the lawyers recommend

18  or more severe than you hoped for, that is not a reason for

19  you to seek to withdraw your guilty plea.  Do you understand

20  that?

21  A    I understand.

22  Q    And you understand that by pleading guilty you may lose

23  the right to vote, the right to hold public office, the right

24  to serve on a jury, and the right to possess a firearm?

25  A    Yes, Your Honor.

1    Q    So do you believe you understand the consequences of

2    pleading guilty today?

3    A    Yes, Your Honor.

4    Q    After all the things we've talked about, is it still your

5    decision to plead guilty?

6    A    Yes, Your Honor.

7            THE COURT:  Does the attorney for the United States

8    or the attorney for Mr. McCormac know of any reason why I

9    should not accept his guilty plea?

10           MS. REITER:  No, Your Honor.

11           MR. MARSH:  I know of none, Your Honor.

12           THE COURT:  So, Mr. McCormac, how do you plead to

13   Count 3, sir?

14           THE DEFENDANT:  I plead guilty.

15           THE COURT:  How do you plead to Count 4?

16           THE DEFENDANT:  I plead guilty.

17           THE COURT:  Based on Michael McCormac's statements

18   under oath in response to my questions, I find he is competent

19   to enter the pleas of guilty, his pleas are made knowledgeably

20   and voluntarily, and they have a basis in fact that contain

21   the elements of the offenses charged.  Therefore, I will

22   accept his pleas and will enter judgment upon those pleas.

23           I'm tentatively going to set sentencing for August 16

24   at 10:30, but I need guidance as to how long you think

25   evidence might be in this case.  I may need to set it, give it

22

1   a special --

2           MS. REITER:  Yeah.

3           THE COURT:  Should I set aside a half day or --

4           MS. REITER:  Oh, for sentencing.  Half a day should

5   be okay.

6           MR. MARSH:  I would imagine so, Your Honor.  I think

7   it might be necessary to see how the probation office

8   calculates loss to then determine what type of a disagreement

9   we may have on our hands, for what that's worth.

10          THE COURT:  I have a rule.  Let me know ten days in

11  advance --

12          MR. MARSH:  Okay.

13          THE COURT:  -- you know, that testimony and how much

14  so that we don't do it in fits and starts; that we get

15  together and do it in one -- you know, not wedge you in

16  between another hearing.  We'll give everyone plenty of time

17  to present what they need to present.

18          So August 16 at 10:30.  Any other matters for the

19  Court's consideration?

20          MR. MARSH:  Your Honor, as we spoke about off the

21  record this morning, I did just want to note for the record,

22  as I told Mr. McCormac I would, that this plea agreement is

23  silent as to the issue of civil remedies, if there were any he

24  could pursue under the law.  And I just want to establish that

25  issue is not addressed in the plea agreement and therefore

23

1    does not preclude anything should anything be available.

2              THE COURT:  Anything further?

3              MS. REITER:  Nothing from the United States, Your

4    Honor.  The plea agreement doesn't speak to that.

5              THE COURT:  Very good.  We'll see you in August.

6                   **(PROCEEDINGS CONCLUDED AT 11:05 AM.)**

CERTIFICATE


I, Shannon L. White, Registered Merit Reporter and

Certified Realtime Reporter, hereby certify that I am a duly

appointed Official Court Reporter of the United States

District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and

accurate transcript of the proceedings held in the

above-entitled case and that said transcript is a true and

correct transcription of my stenographic notes.

I further certify that this transcript contains

pages 1 through 24 inclusive and that this reporter takes no

responsibility for missing or damaged pages of this transcript

when same transcript is copied by any party other than this

reporter.

Dated at St. Louis, Missouri, this 23rd day of April,

2024.


/s/Shannon L White
/s/Shannon L. White
Shannon L. White, CRR, RMR, CCR, CSR
Official Court Reporter